CONTINENTAL CONSTRUCTION CORP., demandante y recurrida, *v.* MUNICIPIO DE BAYAMÓN y REDONDO CONSTRUCTION CORP., demandados y peticionarios.

*Números:* O-84-359,  O-84-394    *Resueltos:* 29 de junio de 1984

*Emilia M. Román Nevárez*, abogada del peticionario Municipio de Bayamón; *José R. Lázaro Paoli*, de *Correa Calzada, Collazo, Salazar, Herrero & Lázaro Paoli*, abogado de la peticionaria Redondo Construction Corporation; *Antonio Moreda*, de *Moreda & Moreda Toledo*, abogado de Continental Construction Corp., recurrida.

EL JUEZ ASOCIADO SEÑOR TORRES RIGUAL emitió la opinión del Tribunal.

Continental Construction Corp. impugnó en el tribunal de instancia la adjudicación de la buena pro de la Subasta del Coliseo Municipal de Bayamón. Subsiguientemente solicitó remedios provisionales bajo la Regla 56 de Procedimiento Civil a fin de que se ordenara al municipio abstenerse de otorgar el contrato de construcción. Luego de celebrarse vistas por cerca de quince días el tribunal expidió una resolución y orden mediante la cual ordenó al municipio y a Redondo Construction Corporation que se abstuvieran de realizar trabajo alguno al amparo del contrato de construcción, sujeto a la prestación de una fianza de $250,000 por la recurrente Continental.

Tanto el municipio como el contratista Redondo acudieron ante este Tribunal con sendas solicitudes de *certiorari* para que dejáramos sin efecto dicha orden.

Consolidamos ambos recursos y proveemos al amparo de

la Regla 50 del Reglamento de este Tribunal, por haber comparecido la recurrida en escrito de oposición a la petición de *certiorari*. No es necesario considerar los planteamientos procesales del recurso, en vista de que concluimos que debe anularse la subasta.

Aparece del expediente que el sistema de licitación utilizado por el municipio fue el de una oferta básica que incluía la estructura del Coliseo y siete alternas aditivas para cubrir la construcción del (1) estacionamiento; (2) sistema control de fuegos; (3) asientos fijos; (4) asientos telescópicos; (5) cancha de baloncesto; (6) pizarra electrónica; (7) sistema de semáforos. Este sistema permitía desarrollar la construcción del proyecto en diferentes etapas de acuerdo con la disponibilidad de fondos. Conforme surge de la sentencia recurrida el municipio utilizó este sistema precisamente porque al momento de anunciarse la subasta no había suficientes fondos asignados. El costo estimado por los arquitectos que diseñaron el proyecto fue de $7,583,906. No obstante, al abrirse las licitaciones sólo se había asignado para la construcción la cantidad de $6,400,000.

Con posterioridad al aviso de subasta, se notificó a los licitadores una enmienda a la alterna 4 relativa a los asientos telescópicos, la cual añadía elementos y detalles a las especificaciones notificadas originalmente.

La oferta más baja propuesta para la construcción de la estructura básica del Coliseo fue la de la recurrida Continental. Igualmente su oferta fue la más baja para dicha estructura y las primeras tres alternas —estacionamiento, sistema control de fuego y asientos fijos. De la cuarta alterna en adelante Redondo resultó ser el mejor postor.

Luego de abiertos los sobres con las licitaciones, un funcionario municipal, el arquitecto Cermeño, solicitó a los postores más bajos —Continental, Rodríguez y Del Valle y Redondo— un desglose de las partidas para poder estudiar mejor las propuestas. Cermeño entregó los desgloses a los arquitectos del proyecto para que hicieran recomendaciones.

Pero la Junta de Subasta otorgó la buena pro a Redondo, sin esperar por las recomendaciones de los arquitectos. Éstos señalaron en su informe que la alterna 4 —asientos telescópicos— requería de los contratistas información detallada, pero que desafortunadamente ninguno de ellos suplió las especificaciones exigidas. Señalaron, además, que no entendían cómo Redondo podía ofrecer la mitad de lo cotizado por los otros licitadores. Recomendaron que los dos postores más bajos especificaran el equipo ofrecido para garantizar el cumplimiento de la subasta y evitar órdenes de cambio. Específicamente, recomendaron que: "En el mejor interés del Municipio el equipo ofrecido por los dos postores más bajos debe ser analizado para garantizar el cumplimiento con los documentos del aviso de subasta de manera de evitar cambios innecesarios y costosos al momento de la construcción."

Un día antes de adjudicar la subasta el alcalde convocó a la Asamblea Municipal a sesión extraordinaria y ésta aprobó la Ordenanza Núm. 97 que aumentó el presupuesto de obras y mejoras en la cantidad de $1,943, 389.64. De esos fondos se contabilizó la cantidad de $1,270,000 para completar los dineros necesarios para poder adjudicar la propuesta básica y las seis alternas aditivas. Dicha cantidad cuadraba perfectamente con la oferta de Redondo. Esta acción, sin embargo, se tomó once días después de la subasta y sin recomendación de la Junta de Subasta. Finalmente se le adjudicó la subasta a Redondo por la oferta básica y las seis primeras alternas. Así las cosas, Continental instó la damanda objeto de este recurso.

■ El Art. 8.03(c) de la Ley Municipal, 21 L.P.R.A. sec. 3253, (1) dispone que la Junta de Subasta Municipal adju-

_____

(1) Dicho artículo dispone en lo pertinente:

"(c) La Junta adjudicará en favor del postor razonable más bajo en el caso de compras, construcciones o suministros de servicios y al postor más alto en casos de ventas o arrendamientos, tomando en consideración que las propuestas sean conformes a especificaciones; términos de entrega; la habilidad del postor para realizar y cumplir con el contrato; la responsabilidad económica del licitador; reputa-

dicará a favor del postor más bajo, tomando en cuenta, entre otros factores, que la propuesta sea conforme a especificaciones. En el caso de autos ninguno de los postores incluyó las especificaciones establecidas en la adenda 2 para la alterna 4, asientos telescópicos. Se recordará que los arquitectos que diseñaron el proyecto recomendaron, para evitar órdenes de cambio y lograr el cumplimiento de la subasta, que los dos licitadores más bajos especificaran el equipo ofrecido. No se siguió esta recomendación.

■ Ciertamente para cumplir con lo preceptuado en la Ley Municipal, la Junta de Subasta debió esperar las recomendaciones de los arquitectos que contrató el municipio para diseñar la obra. Más aún, debió seguir las prudentes recomendaciones de los arquitectos y pedir las especificaciones. El hecho de que se hubiese otorgado la subasta no impedía a la Junta seguir las recomendaciones de sus asesores y de considerarlo necesario para la protección de los intereses del municipio revocar la adjudicación de la subasta. La norma al respecto reconoce esta facultad de la Junta de Subasta precisamente para evitar la posibilidad de favoritismo, descuido, extravagancia y corrupción. *Justiniano* v. *E.L.A.*, 100 D.P.R. 334, 338 (1971) y *Cancel* v. *Municipio de San Juan*, 101 D.P.R. 296, 300-301 (1973).

En vista de lo anterior, *concluimos que la omisión de la Junta de Subasta en no seguir el prudente asesoramiento de los arquitectos y asegurarse de que las licitaciones cumplieran con las especificaciones, según lo requiere el citado Art. 8.03(c) de la Ley Municipal, invalida la adjudicación de la subasta.*

*Se expedirá el auto y se dictará sentencia que anule la subasta.*

El Juez Asociado Señor Rebollo López concurre en el resultado sin opinión.

---

ción e integridad comercial y otras condiciones insertadas en el pliego de subastas; Disponiéndose que la Junta podrá adjudicar a un postor que no sea necesariamente el más bajo o más alto, según sea el caso, si con ello se beneficia el interés público."