Aponte Jiménez, Juez Ponente
*979 TEXTO COMPLETO DE LA RESOLUCION
INNOVA, Inc., recurrente, nos solicita que revoquemos la decisión de la Autoridad de Carreteras y Transportación de Puerto Rico (Autoridad), aquí recurrida, mediante la cual dicha agencia le rechazó la propuesta que sometió en la subasta Proyecto Federal QNX-2(21) para la rehabilitación de la Escuela Rafael M. Labra de San Juan. Atendido el recurso ante nuestra consideración y a la luz de los fundamentos que a continuación esbozamos, acordamos denegar la expedición del auto solicitado.
La Autoridad solicitó propuestas para la realización del mencionado proyecto de rehabilitación de la Escuela Labra. Entre los requisitos establecidos en los pliegos originales exigió el cumplimiento con las disposiciones del programa de Disadvantaged Business Enterprises (DBE). Sobre ese particular requirió, como mínimo, que un trece por ciento (13%) del monto total de la obra fuese contratado o subcontratado con una o varias firmas que cumpliesen con los requisitos del programa DBE.
El 10 de junio de 1999, dicha agencia emitió un primer addendum a los pliegos de licitación. El mismo contiene una enumeración de las secciones y documentos enmendados o nuevamente incluidos como parte de los pliegos de la subasta los cuales todo licitador tenía que considerar y utilizar en la preparación de su propuesta. Específicamente revisó el “proposal schedule” suplido a ser utilizado por cada licitador. Le añadió una partida designada núm. 2 por la cantidad fija de $60,000 con el propósito de instalar una escultura alusiva a la Escuela Labra. Dicho trabajo quedó descrito como parte del “Special Provision: Specification 151 - Mobilization”. Especificó que los documentos incluidos en ese addendum que afecten el “proposal schedule” deberán formar parte de los que se sometan el día de la subasta.
Posteriormente, el 18 de junio de 1999, emitió un segundo addendum. En éste, al igual que en el primero, se detallan las diversas especificaciones del proyecto. Particularmente hizo nuevamente referencia a la partida de $60,000 para la escultura. Esta vez incorporó una partida de $10,000 para la construcción de las zapatas y otra de $4,000 para instalar las facilidades de iluminación de la misma. Empero, en el “proposal schedule” revisado que suplió no incluyó esas dos partidas fijas adicionales. En su lugar insertó la cantidad fija de $60,000 en la partida núm. 2 referente a la mencionada escultura. Es decir, no incluyó partida alguna para los $10,000 y $4,000 a que aludió en el segundo addendum. Reiteró a los notificados que los documentos incluidos en el addendum que afectasen el “proposal schedule” tenían que formar parte de los documentos a someterse el día de la subasta. Finalmente, reseñaló la celebración de la subasta pautando la misma para el 29 de junio de 1999.
En la fecha indicada se celebró la subasta. De las catorce (14) entidades que adquirieron los pliegos de la subasta, sólo seis (6) presentaron su licitación. Se leyeron las mismas resultando ser la de la recurrente INNOVA, Inc. la más baja económicamente. En esa misma fecha, la Junta de Subastas se reunió. Decidió descalificar la propuesta de INNOVA. Se t¡asó en que no cumplió plenamente con los documentos requeridos. A base de ello, le adjudicó la subasta al segundo licitador más bajo, Caribe Tecno, S.E.
El 6 de agosto de 1999 se notificó vía telefax la adjudicación de la subasta y los respectivos rechazos de las otras licitaciones. La Junta de Subastas de la Autoridad (junta) le indicó a Caribe Tecno, Inc., socio administrador de Caribe Tecno, S.E., que fue el licitador agraciado, por lo que debía cumplir con todas las disposiciones establecidas en los pliegos de condiciones. También le informó a INNOVA, Inc. que “la propuesta sometida en la subasta de referencia fue rechazada, de acuerdo a las Condiciones Generales, ya que no consideró el addendum número dos”. A tono con lo anterior, el 16 de agosto de 1999, Caribe Tecno, S.E., a *980 través de su socio administrador Caribe Tecno, Inc., sometió el “Certificate of DBE's Utilization” desglosando las cantidades correspondientes a cada subcontratista en desventaja económica que utilizaría en el proyecto. La cantidad excede el trece por ciento 13% del requerido total del valor del proyecto. 
INNOVA, Inc. solicitó reconsideración. En atención a ello, la Junta de Subastas de la Autoridad le notificó que “[l]a propuesta sometida en la subasta de referencia fue rechazada, de acuerdo a las Condiciones Generales, ya que no utilizó la página 1 del “proposal schedule” revisado el 2 de junio de 1999, el cual formaba parte del addendum número 1”. Le indicó, además, que esa comunicación constituía una enmienda a la notificación previa. De esta segunda notificación, INNOVA, Inc. presentó el 20 de agosto de 1999 otra moción de reconsideración. La Autoridad no tomó acción alguna sobre ella dentro del plazo prescrito por ley.
El 30 de agosto de 1999, INNOVA, Inc. sometió ante la Autoridad una moción suplementando su solicitud de reconsideración. También recurrió ante este Foro con el recurso de revisión que nos ocupa. Plantea que no procedía la notificación de la adjudicación de la subasta mediante telefax porque desde el momento de la adjudicación el procedimiento se convierte en uno formal por lo que la sección 3.16 de la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), 3 L.P.R.A. sec. 2166, requiere notificación escrita por correo certificado con acuse de recibo. Levantó, además, que cumplió con todos y cada uno de los renglones del addendum núm. 2; que la enmienda a la notificación original no constituía una determinación de la Junta de Subastas como cuerpo colegiado; que la alegada falla es un error fácilmente subsanable; y que las partidas fijas relativas a la escultura no estaban sujetas a negociación.
En relación con dichas partidas fijas, aduce que como el “proposal schedule” era defectuoso al no considerar el total de los $74,000 correspondientes a la escultura, había que anular la subasta porque ningún licitador las incluyó o que en la alternativa procedía la adjudicación a INNOVA, Inc. al no ser necesaria la particularización de cada una de esas partidas. Indicó, asimismo, que se adjudicó la subasta a Caribe Tecno, Inc., una entidad que no presentó propuesta. Por último, expuso que la entidad agraciada no sometió el “Certification of DBE's Utilization” dentro de los diez (10) días siguientes a la apertura de la subasta.
El 22 de septiembre de 1999, después de presentado el recurso, INNOVA compareció ante nos. Sometió una solicitud para que en auxilio de nuestra jurisdicción paralizáramos los trabajos de rehabilitación que ya habían comenzado en la Escuela Labra. Se basó en que de no accederse a ello, podría tener la consecuencia de tomar académico este recurso. Atendida dicha solicitud, le concedimos un breve término a las partes para que se expresaran en tomo a la misma y al recurso instado. Tanto la Autoridad como Caribe Tecno, S.E. comparecieron en cumplimiento con lo ordenado. La primera señaló que la decisión se notificó vía telefax según establece el Reglamento de Subastas, Art. IX(A) (7) , y que la sección 3.16 de la L.P.A.U. aplica estrictamente a procedimientos adjudicativos formales. Adujo también que estuvo justificado y no constituyó una actuación irrazonable o un abuso de discreción el rechazar la licitación de INNOVA, Inc. porque ésta sometió su propuesta en formularios distintos a los emitidos o especificados, siendo mandatoria y no discrecional la descalificación según ordena la sec. 102.14(a) del “Standard Specification for Road and Bridge Construction Núm. 966 del 1989”, cuerpo legal que es aplicable a la Junta.
Expuso, además, que es improcedente el argumento de que se adjudicó la subasta a una entidad distinta al licitador porque Caribe Tecno, S.E. fue la entidad que presentó su licitación y obtuvo la buena pro, siendo Caribe Tecno, Inc. meramente el socio administrador de Caribe Tecno, S.E. Por último, señaló que Caribe Tecno, Inc. cumplió con el programa DBE porque luego de habérsele requerido cumplir al adjudicarle la subasta, ésta proveyó oportunamente la distribución de la labor a ser realizada por los subcontratistas que sí estaban certificados como DBE's por la Autoridad. Igualmente, en su oposición a Solicitud en Auxilio de Jurisdicción señaló que no procedía la misma porque INNOVA, Inc. dejó de cumplir con los criterios para la expedición de *981 injunction preliminar establecidos en P.R.T.C. v. Tribunal Superior, 103 D.P.R. 200 (1975).
Por su parte, Caribe Tecno, S.E. argumentó que fue la entidad que licitó y resultó agraciada con la adjudicación de la subasta. Sostuvo que la notificación a Caribe Tecno, Inc. se debe a que ésta es el socio administrador de Caribe Tecno, S.E. Afirmó que cumplió con el requisito del programa de DBE porque sometió a tiempo toda la documentación necesaria desde que fue considerada y notificada como el postor más bajo. Finalmente, planteó la no procedencia de la moción en auxilio de jurisdicción porque INNOVA, Inc. no cumplió con los criterios establecidos en P.R.T.C. v. Tribunal Superior, supra.
Mediante resolución de 5 de octubre de 1999, le ordenamos a la Autoridad que nos aclarase las razones y pormenores específicos que tuvo para rechazar la propuesta de INNOVA a la subasta impugnada y nos acreditara sus fundamentos. En cumplimiento con lo ordenado, dicha parte compareció. Reprodujo los planteamientos previamente expuestos en su oposición a la solicitud de revisión. Especificó que INNOVA no sometió el “proposal schedule” adecuado, lo cual era una falla insubsanable. Añadió que el “proposal schedule” que distribuyó la Autoridad fue enmendado. Se incluyó una partida de $60,000 para la construcción de una escultura y exigió, a la vez, que dicho documento debía formar parte de los que se sometieran el día de la subasta.
Le concedimos un breve plazo a INNOVA, Inc. para que replicara. A esos fines éste compareció elaborando los argumentos anteriormente presentados. Afirmó que en su propuesta consideró una partida específica para lo concerniente a la figura alegórica a la Escuela Labra tal y como lo exigió la Autoridad en el “proposal schedule” enmendado a pesar de que no la incluyó en el “proposal schedule”. Implica nuevamente que la totalidad de su propuesta incluía la referida partida. Evaluado el recurso instado, procede denegar la expedición del mismo. 
Comenzamos por señalar que, conforme nuestro ordenamiento jurídico, la función revisora de los tribunales con respecto a las determinaciones de los organismos administrativos es una de carácter limitado. A esos efectos se ha desarrollado la doctrina en el sentido de que las decisiones de los organismos administrativos merecen gran deferencia y respeto por los tribunales. Ello se basa en la experiencia y peritaje que gozan dichos organismos en las áreas de su competencia. Misión Industrial v. Junta de Planificación, 98 J.T.S. 79; Maisonet Felicié v. Corporación del Fondo del Seguro del Estado, 96 J.T.S. 169. De esa forma, las decisiones administrativas tienen a su favor una presunción de regularidad y corrección que prevalece mientras la parte que las impugne no produzca suficiente evidencia para derrotarlas. Misión Industrial v. Junta de Planificación, supra; Henríquez v. Consejo de Educación Superior, 120 D.P.R. 194 (1987).
Por ello, los tribunales deben limitarse a determinar si la agencia actuó arbitraria, ilegalmente o en forma tan irrazonable que su actuación hubiese constituido un claro abuso de discreción. Fuertes v. A.R.P.E., 93 J.T.S. 165; Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692 (1975). Es decir, deben indagar sobre la razonabilidad de la decisión administrativa y no sustituir el criterio de dicho organismo por el suyo propio, a menos que se violen derechos constitucionales o que la actuación administrativa sea totalmente arbitraria La Facultad para las Ciencias Aplicadas. Inc. v. C.E.S., 93 J.T.S. 88.
Dentro del marco de este contexto doctrinal y en lo que respecta al ámbito de la revisión judicial en casos de impugnación de subastas bajo la L.P.A.U., no puede perderse de perspectiva que los estatutos que rigen la celebración de subastas para contratar con el gobierno tienen la finalidad de promover la competencia en las proposiciones de manera que el Estado consiga que se realice la obra o se presten los servicios al precio más bajo posible para la ciudadanía. Continental Construction v. Municipio, 115 D.P.R. 559, 563 (1984). Se pretende así evitar el favoritismo, la corrupción, el descuido y la extravagancia al otorgarse los contratos, a la vez que se minimizan los riesgos de incumplimiento por parte del postor agraciado. Mar-Mol Company v. Administración de Servicios Generales, 126 D.P.R. 864, 871-872 (1990).
*982 De tal modo, la doctrina reconoce que en ausencia de mala fe, fraude o un claro abuso de discreción, ningún postor tiene derecho a quejarse cuando otra proposición es elegida como la más ventajosa. La decisión con respecto a qué persona natural o jurídica debe resultar agraciada en el proceso de adjudicación de la subasta debe resolverse a la luz del interés público. Ningún postor puede hacer reclamos de derechos adquiridos en ninguna subasta. Great American Indemnity Co. v. Gobierno de la Capital, 59 D.P.R. 911, 917 (1942). Le corresponde así a la parte impugnante, en la etapa de revisión, el peso de establecer que no existe base racional que sostenga la decisión administrativa que es objeto de impugnación.
Ahora bien, por la naturaleza del proceso y la finalidad perseguida con la utilización del mecanismo de la subasta, es necesario, como cuestión de política pública, que los licitadores compitan en igualdad de condiciones. La elegibilidad de un licitador para resultar agraciado en la adjudicación de la subasta depende de que su oferta sea la más baja responsiva y de que a su vez el postor se considere responsable. Donald P. Amavas y William, J. Rubbery, Government Contract Guidebook, lera ed. (1986), págs. 3-23. Una propuesta se considera responsiva cuando contiene una oferta definida, no condicionada, que cumple con los términos, instrucciones y especificaciones sometidas por la agencia. Id., págs. 3-24. En otras palabras, es responsivo aquel licitador que ha sometido una propuesta que está conforme en todos los aspectos importantes con los términos de la invitación a la subasta. Model Procurement Code for State and Local Governments American Bar Association, Section of Public Contract Law (1979), Art. 3-101(7); Véase, North East Construction Co. v. Rommey, 485 F. 2d 752 (D.C.Cir. 1973).
Si un licitador es responsivo, se determina a la fecha de apertura de los pliegos. Luego de ello, nada puede hacer un licitador no responsivo para convertir su propuesta en una responsiva. Amavas y Rubbery, ob. cit., págs. 3-24. En ese proceso se le reconoce a la agencia un alto grado de discreción en su función evaluadora y adjudicativa. A base de estas normas de derecho, pasemos a considerar los señalamientos de la parte recurrente.
Plantea INNOVA, Inc. que erró la Autoridad al notificar la adjudicación del proyecto vía telefax y no mediante correo certificado con acuse de recibo según lo dispuesto por la sección 3.16 de la L.P.A.U., 3 L.P.R.A. sec. 2166, para los procedimientos adjudicativos. Apoya su pretensión en Cotto Guadalupe v. Depto. de Educación, 95 J.T.S. 79. No tiene razón. Por disposición de ley, los procedimientos de adjudicación de subasta son informales. Su reglamentación y términos serán establecidos por las agencias administrativas. Id., sección 3 de la L.P.A.U., 3 L.P.R.A. sec. 2169. Por ello, no es propiamente aplicable la mencionada sección 3.16, la cual exige que se notifique por correo certificado con acuse de recibo toda determinación de la agencia administrativa cuando se concluye o decide no iniciar o continuar un procedimiento adjudicativo en un caso particular. No podemos pasar por alto que los procedimientos a que alude el subcapítulo III de la L.P.A.U. del cual la sección 3.16 forma parte, trata sobre la adjudicación formal de una controversia. La Autoridad, en su lugar, actuó de acuerdo a lo establecido en el Art. IX(A)(7) de su Reglamento de Subastas , el cual permite hacer la notificación en persona, por correo certificado o vía telefax.
En Cotto Guadalupe v. Depto. de Educación, supra, se resolvió que la adjudicación de una subasta era un procedimiento informal. No así su etapa de reconsideración y de revisión judicial que sí se considerarán procedimientos formales. En específico, citando del Informe de la Comisión de lo Jurídico del Senado del 23 de junio de 1989 relacionado con la enmienda a la L.P.A.U. para añadir la sección 3.19 de dicha ley, nuestro Tribunal Supremo expuso lo siguiente:

“Con las enmiendas relativas a las subastas se pretende simplificar los procedimientos adjudicativos de subastas, deforma que sólo se consideran procedimiento [s] formales, la reconsideración y la revisión judicial, obviándose los requisitos del Capítulo III de la Ley 170 en todo el proceso anterior a la reconsideración, y limitándose los procesos formales a la propia moción de reconsideración, sin que se provea para 
*983
descubrimiento de prueba u otros procedimientos por ley, dejando a las agencias disponer por reglamento todo lo relativo al proceso de subasta... ”.

Como se puede apreciar, los requisitos del Capítulo III de la L.P.A.U., entre los cuales se encuentra la notificación por correo certificado exigida por la sección 3.16 y la cual ocurre antes de la reconsideración y revisión judicial, son obviados en los procedimientos de subastas. La Autoridad no venía obligada a notificar por correo certificado.
A juicio nuestro, la expresión en Cotto Guadalupe de que la notificación de la decisión allí impugnada no cumplió con la sección 3.16 de la L.P.A.U., pág. 973, se limitó a los hechos particulares de ese caso. Allí, la falta de notificar la adjudicación de la subasta fue lo que evitó que el recurrente pudiese acudir dentro del término establecido en ley para solicitar la revisión judicial. Al declararse el tribunal de instancia sin jurisdicción para revisar una determinación de la Junta de Subastas del Departamento de Educación que descalificó al recurrente como licitador en una subasta de dicha agencia, el Tribunal Supremo resolvió que el término para solicitar la revisión judicial comenzó a decursar una vez se adjudicó la subasta y no desde la fecha en que se eliminó la licitación del recurrente. Distinta situación ocurre en el caso de autos en que se le notificó oportunamente a INNOVA, Inc. por telefax sin afectarle su derecho a solicitar reconsideración y/o revisión judicial. En ese sentido, INNOVA, Inc. no ha hecho planteamiento alguno sobre cómo se perjudicó, si algo, su derecho. De esa forma, no se cometió el error señalado.
En su segundo señalamiento de error, plantea que las razones aducidas por la Autoridad para rechazar su propuesta no son válidas, puesto que cumplió con todos los requisitos del proyecto y fue el postor más bajo. De igual forma sostiene que de existir los defectos alegados los mismos son fácilmente subsanables sin tener que descartar su propuesta. No compartimos ese criterio. Los términos y especificaciones de la subasta requerían inicialmente ciertas partidas. Más tarde, la Autoridad añadió una partida de $60,000 para la construcción de una escultura. A esos efectos enmendó el “proposal schedule”. Si bien es cierto que posteriormente incluyó dos partidas adicionales referentes a la escultura, una de $10,000 para la zapata y otra de $4,000 para la iluminación, la realidad es que no enmendó el “proposal schedule” para incorporar estas dos nuevas partidas. Por el contrario el documento que suplió a los licitadores ya llevaba pre-impreso la cantidad de $60,000 asignada para la escultura. Por consiguiente, según los términos y especificaciones de la subasta, el “proposal schedule” apropiado para licitar era el que aparecía incluido en el Addendum núm. 1 que solamente hacía referencia a la partida adicional de los $60,000.
INVOVA, Inc. no utilizó dicho “proposal schedule” suplido por la Autoridad. También omitió licitar en cuanto a los $60,000. Por ello, se decidió descalificarla. Al así actuar la Autoridad, lo hizo correctamente. Además, de tener que licitar con la partida de $60,000 en su propuesta era requisito también hacerlo con el documento adecuado y no cualquier otro. Es decir, fueron dos los requisitos ignoradqs. De tal forma no fue el licitador más bajo responsivo. Su omisión al no incluir la partida de $60,000 establecida en el “proposal schedule” enmendado incide precisamente en el precio de una partida específica. Claramente, no cumplió con los términos del addendum núm. 1. Su tesis en cuanto a que la referida partida reservada para la construcción de la escultura estaba incluida en su licitación no nos persuade. Ello se presta a que un proponente obtenga una ventaja injustificada sobre los demás licitadores al licitar en un subasta. Según se puede alegar que la partida omitida estaba incluida, también existe espacio para lo contrario. Resulta menester destacar que INNOVA fue el único postor que no sólo utilizó un “proposal schedule ” distinto al suplido por la Autoridad, sino que tampoco incluyó la partida de $60,000 exigida por el addendum 1. 
En cuanto a las partidas de $10,000 y 4,000 incluidas en el addendum núm. 2 a que alude el recurso, la realidad es que ninguno de los licitadores cumplió con ellas. Asimismo, del expediente no surge que la Autoridad *984 hiciera referencia a esas partidas antes o durante la celebración de la subasta. Como antes dicho, fue la misma Autoridad quien insertó en el núm. 2 de dicho “proposal schedule” la partida de $60,000 para los fines expresados, no de $74,000. En vista de que los demás licitadores, incluyendo a Caribe Tecno, Inc., utilizaron el “proposal schedule” correcto, el mismo que les suplió la Autoridad, éste podía decidir descalificarlos a todos y cancelar la subasta o continuar el procedimiento. Optó por esto último. Apreciamos que ante esas circunstancias, contempló que la mejor alternativa era continuar los procedimientos, ya que en ese sentido todos los licitadores se encontraban en la misma condición, por lo que no se perjudicaba el principio cardinal de toda subasta que lo constituye la libre competencia en igualdad de condiciones. Al ser ese el criterio de la agencia administrativa especializada en la materia, nos inclinamos por no sustituirlo en ausencia de una actuación totalmente arbitraria o irrazonable. Es nuestro parecer que tal curso de acción de la Autoridad no es arbitrario, ilegal o irrazonable, o un claro abuso de discreción. Además, INNOVA no nos ha colocado en posición de sustituir nuestro criterio por el del organismo administrativo.
Por otro lado, el Art. VII, inciso F(6), del Reglamento de Subastas dispone que la Junta podrá discrecionalmente obviar cualquier informalidad o tecnicismo en los documentos de cualquier proposición, siempre que fuesen errores subsanables. La Autoridad determinó que las faltas cometidas por INNOVA eran insubsanables. Dicha actuación no constituyó, a juicio nuestro, un abuso de discreción o una actuación arbitraria. INNOVA tampoco ha demostrado la existencia de otras consideraciones ilegítimas para la acción de la Autoridad. De esa forma, no se cometió el error imputado. Procede, consiguientemente, mantener su criterio.
Por su tercer señalamiento, aduce INNOVA, Inc. que la Autoridad erró al adjudicar el proyecto a Caribe Tecno, Inc., una entidad que nunca sometió pliegos, ni licitó. También es inmeritorio ese planteamiento. Surge claramente de los documentos en el expediente que Caribe Tecno, S.E. fue la compañía que licitó y se le adjudicó finalmente la subasta. La corporación Caribe Tecno, Inc. actuó simplemente como socio administrador del licitador agraciado Caribe Tecno, S.E. En nada afecta a este procedimiento de subasta, el hecho de que la notificación de la adjudicación de la subasta se la hayan dirigido a Caribe Tecno, Inc. como socio administrador de Caribe Tecno, S.E. Por tanto, no se cometió el alegado error.
Por último, señala INNOVA, Inc. que incidió la Autoridad al adjudicar la buena pro a Caribe Tecno, S.E. Se basa en que no cumplió con los requisitos del programa DBE. Tampoco procede este argumento. La segunda instrucción a los licitadores. (“Instructions to Bidders”) advierte a datos que el proyecto requiere la utilización de empresas en desventaja económica en una suma no menor de un trece por ciento (13%) del valor del proyecto. Respecto al proceso que debía seguirse para cumplir este requisito de DBE, el documento titulado “Special Provision on the Utilization of Disadvantaged Business Enterprise ” incluido en el “Contract Documents” dispone en su inciso 4 lo siguiente:

“4.01...

4.02 If the low bidder has not been previously certified as a DBE, the low bidder has ten (10) days after the date of the opening of bids to submit a request for certification as a DBE and/or a Certificate of DBE'ss Utilization in the form attached to and made part of this special provision.

4.03...

4.04 If the low bidder elects to submit a Certificate of DBE's Utilization within the specified ten-day period, such certificate shall have attached a duly completed application form AC-57 1-b for each of the subcontractors and/or suppliers included in the certificate who has not been previously certified as a DBE.

*985
If the certificate is acceptable to the Authority, the contract award process continues as provided in the General Provision.... ”.

Basado en estas disposiciones, notamos que Caribe Tecno, S.E., aunque no estaba certificada como una DBE, no tenía la obligación de presentar junto a su propuesta evidencia alguna de la intención de subcontratar entidades DBE. Las instrucciones a los licitadores no se lo exigían. Tan es así, que INNOVA, Inc. no presentó certificación alguna. Sólo sometió la certificación en blanco y una resolución corporativa a los efectos de que se proponía iniciar los trámites para la elegibilidad del programa DBE. Igualmente, Caribe Tecno, S.E. optó por presentar una certificación de utilización de compañías DBE con solamente los nombres de las empresas que se proponía usar, de salir agraciada en la subasta.
De la apertura de los pliegos surgió que Caribe Tecno, Inc. no resultó ser el postor más bajo, por lo que no tenía que finalizar el procedimiento dentro de los siguientes diez (10) días ya que el “Special Provision” 4.02 antes citado sólo requiere al postor más bajo completar ese requisito. Al resultar INNOVA, Inc. el postor más bajo, le correspondía a ésta cumplir con lo requerido. Una vez descalificada, Caribe Tecno, S.E. se convirtió en el postor más bajo responsivo y así se lo notificaron el 6 de agosto de 1999 por telefax. En ese momento comenzó a contar el término de diez (10) días provisto en la citada disposición. Fue entonces el 16 de agosto de 1999 que Caribe Tecno, S.E. sometió oportunamente el “Certificate of DBE's Utilization” dentro del término establecido. Desglosó diversos subcontratistas DBE y su cantidad monetaria total, la cual excede el trece por ciento (13%) del costo total del proyecto. De esa forma, Caribe Tecno, S.E. cumplió con el requisito del programa DBE. No se cometió el error alegado.
En concordancia con los fundamentos antes expuestos, resolvemos denegar la expedición del recurso solicitado.
La Juez Alfonso de Cumpiano concurre con el resultado mediante voto particular.
Lo acuerda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2000 DTA 57
1. Le imputa a la Autoridad la comisión de varios errores, a saber:

“A. Erró la Autoridad en la forma en que notificó las decisiones de la adjudicación del proyecto; al omitir su notificación mediante correo certificado con acuse de recibo, incumplió con las disposiciones de la Ley de Procedimiento Administrativo Uniforme.

B. Erró la Autoridad al rechazar la propuesta de INNOVA, Inc. por cualquiera de las razones aducidas en las cartas de 5 y 10 de agosto de 1999. INNOVA, Inc. cumplió con todos los requisitos del proyecto y fue el postor más bajo. Los defectos alegados por la Autoridad son inexistentes, y, de existir, son de fácil subsanación, no ameritando el rechazo de la propuesta.

C. Erró la Autoridad al adjudicar el proyecto a Caribe Tecno, Inc. Ninguna firma de este nombre retiró los pliegos del proyecto o siquiera licitó.

D. Erró la Autoridad al adjudicar el proyecto a Caribe Tecno, Inc., o a Caribe Tecno, S.E., si (ésta) es la lidiadora a la cual se creyó que adjudicaba la buena pro. Caribe Tecno, Inc. o Caribe Tecno, S.E. no cualifican como empresa 
*986
comercial en desventaja y no presentaron la documentación e información requerida para suplir un mínimo de 13% de bienes o servicios mediante subcontratistas y suplidores que estuviesen certificadas como empresas DBE. ”

2. El programa DBE, en esencia, requiere la participación de firmas económicamente en desventaja, según determinado por ciertos parámetros federales, en contratos de obras públicas con fondos federales. La norma es reservar un porcentaje del monto total de la obra para ser contratado por una o varias firmas certificadas como DBE. La reglamentación federal, respecto al programa, se encuentra en el título 49 del Code of Federal Regulations. La Autoridad se encarga, conjuntamente con las oficinas federales correspondientes, de certificar los contratistas y suplidores que cumplan con los requisitos del programa DBE.
3. El “proposal schedule” es el documento integrante de la propuesta de licitación en el cual se someten los precios por cada partida de trabajo a realizarse. Este es el documento que es leído durante la apertura de la subasta para dar a conocer las diversas licitaciones sometidas.
4. Véase apéndice de la Solicitud de Revisión, págs. 346-348, 352.
5. Véase apéndice de la Solicitud de Revisión, págs. 611-612.
6. Estas propuestas se desglosan de la siguiente forma: INNOVA, Inc. - $6,149,000.00; Caribe Tecno, SE. $6,214,800.00; Gracia y Marín Corp. - $6,339,468.00; Fe-Ri Const. - $6,494,000.00; The Unitech Eng. -$7,700,000.00; Francisco Levy - $7,754,000.00.
7. El documento Recepción de Subasta Formal 99-72 señala en su sección de “errores e informalidades” que INNOVA, Inc. “no consideró add. No. 2 del 18/6/99. ” Sin embargo, el documento Registro de Subasta Formal 99-72 hace alusión a la partida núm. 2, es decir, índice que INNOVA, Inc. “no incluyó add. pida- 2”. Véase apéndice de la Solicitud de Revisión, págs. 674 y 677.
8. Las cantidades de los subcontratos con entidades en desventaja económica suman $868,500, las cuales exceden los $807,924 requeridos.
9. Este Artículo dispone: “El Presidente de la Junta tendrá la responsabilidad de notificar por escrito a los licitadores participantes en la subasta la decisión tomada por el Director. Esta notificación podrá hacerse en persona, por correo certificado o vía telefax. Ninguna otra acción de la Autoridad se considerará como la aceptación de la propuesta. ”
10. Con fecha de 24 de noviembre de 1999, denegamos la solicitud de orden en auxilio de jurisdicción.
11. Véase nota al calce núm. 9.
12. De sumarse los aludidos $60,000 a la propuesta de INNOVA, su postura asciende a $6,209.000.00.
13. Véase apéndice de la solicitud de revisión, págs. 672-677,718-720.
14. Véase apéndice de la solicitud de revisión, pág. 22.
15. Véase apéndice de la solicitud de revisión, págs. 738-739.