# 2007 DTA 99

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL III**

PAN AMERICAN TELEPHONE CO., INC.
Recurrente

V.

AUTORIDAD DE LOS PUERTOS DE PUERTO RICO; JUNTA DE SUBASTAS DE LA
AUTORIDAD DE LOS PUERTOS DE PUERTO RICO; JUNTA APELATIVA DE SUBASTAS
DE LA AUTORIDAD DE LOS PUERTOS DE PUERTO RICO
Recurridos

Núm. KLRA-2004-00962

San Juan, Puerto Rico, a 13 de agosto de 2007

Panel integrado por su Presidente, el Juez Ortiz Carrión,
y los Jueces Rivera Román y Varona Méndez

Rivera Román, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Mediante sentencia dictada el 29 de junio de 2005 revocamos la decisión formulada por la Autoridad de los Puertos de Puerto Rico de conceder a Choicetel Acquisition, Inc. (Choicetel) la buena pro en un proceso de requerimiento de propuestas (*Request for Proposal* o RFP por sus siglas en inglés) por entender que no existía justificación legal para obviar el proceso de subasta.

En reconsideración, dejamos sin efecto la sentencia dictada y ordenamos a la recurrente Pan American Telephone Co., Inc. que notifique copia de la revisión administrativa a todos los participantes del proceso administrativo para que éstos comparecieran ante nos a fijar su posición sobre los méritos del recurso.

Habiéndose acreditado la notificación adecuada de la solicitud de revisión a todas las partes y habiendo comparecido cada una de éstas, procedemos a adjudicar el recurso.

**I**

El recuento fáctico y procesal que realizáramos en la sentencia de 29 de junio de 2005 sirve como marco a

la sentencia que emitimos hoy.

Los hechos principales no son motivo de controversia y pueden resumirse de la siguiente forma: El Subdirector Ejecutivo de la Autoridad de los Puertos, licenciado Carlos M. Rodríguez, invitó mediante carta con fecha de 29 de abril de 2004 a varias empresas proveedoras de telefonía pública a someter propuestas (*Request for Proposal*) para brindar servicio en las facilidades del Aeropuerto Internacional Luis Muñoz Marín y en los Muelles Turísticos del área de San Juan. La carta de invitación incluia un documento en el cual se enumeraron los requisitos mínimos de contratación con la Autoridad de los Puertos, así como los parámetros e indicaciones de los servicios a ser desarrollados. La propuesta debía incluir aspectos en áreas, tales como: (1) servicio al cliente; (2) equipo de teléfono; (3) informes mensuales detallados de los ingresos por cada teléfono y máquinas de tarjetas prepagadas y créditos; (4) monitoreo electrónico de cada unidad de teléfono; (5) bono de instalación por cada unidad de teléfono; (6) garantía mínima por teléfono mensual; (7) comisiones mensuales de las ganancias netas de tarjetas prepagadas por cada teléfono; (8) comisiones prepagadas; (9) experiencia gubernamental y privada; (10) certificaciones vigentes.

La Autoridad de los Puertos permitiría la instalación del servicio telefónico en sus facilidades y, a cambio, la entidad privada beneficiada le pagaría una suma de dinero. La transacción implicaba para la Autoridad de los Puertos recibir dinero y permitir el uso de sus facilidades, pero no incluiría la erogación de fondos.

Pan American sometió su propuesta el 17 de mayo de 2004. Surge del expediente que también presentaron propuestas Puerto Rico Telephone Company (PRTC) y Choicetel.

El 22 de octubre de 2004, Pan American recibió una carta del Comité Evaluador de la Autoridad de los Puertos en la cual le informaba que no había sido seleccionada. El texto de la carta es el siguiente:

*"Estimado señor Álvarez:*

*La Autoridad de Puertos de Puerto Rico ha llevado a cabo un proceso de "Request for Proposal" (RFP) para los servicios de telefonía pública (teléfonos públicos) a ser ofrecidos en las instalaciones de esta corporación. Como parte del proceso, el Comité Evaluador ha completado su fase de estudio y análisis de las propuestas recibidas.*

*Luego de haber evaluado las propuestas a la luz de los requerimientos establecidos por la Autoridad, le informamos que Pan American Telephon Co., Inc. no ha sido seleccionada para proveer los servicios de teléfonos públicos.*

*Agradecemos su interés en servirle a la Autoridad de los Puertos y le invitamos a participar en procesos similares en el futuro.*

*Cordialmente,*

*(Firma)*
*Lcdo. Enzio H. Ramírez Echevarría*
*Presidente Comité Evaluador"*

Tras solicitar la reconsideración de la entidad pública y que esta fuera rechazada de plano, Pan American presentó la solicitud de revisión que nos ocupa. En su escrito adujo como único error:

*"[C]ontratar a un concesionario de forma secreta y sin la celebración de subasta pública, conforme lo requiere el Artículo 11 de su Ley Orgánica, Ley Número 125 del 7 de mayo de 1942, 23 L.P.R.A. sec. 341,*

*según enmendada. Ello además de ser erróneo, atenta contra el esquema de política pública diseñado para la contratación del Gobierno y sus agencias e instrumentalidades."*

La Autoridad de los Puertos compareció a oponerse oportunamente. En síntesis, arguyó que, conforme a su Ley Orgánica, existen circunstancias en las que, por excepción, no es necesario celebrar una subasta y que en el presente caso se configuraba una de esas excepciones. Alegó, además, que se trataba de la selección de un concesionario para prestar un servicio que no requería el desembolso de fondos públicos.

Así las cosas, el 29 de junio de 2005, dictamos sentencia en la que revocamos la decisión administrativa.

Posteriormente compareció Choicetel, a quien se le otorgó la buena pro, y solicitó el relevo de la sentencia emitida y la desestimación del recurso de revisión. Alegó que la sentencia fue dictada sin jurisdicción, pues no fue notificada del recurso presentado siendo parte con interés en el resultado del mismo. Inicialmente declaramos no ha lugar el relevo solicitado; no obstante, en reconsideración, dejamos sin efecto la sentencia previamente emitida y ordenamos a Pan American notificar adecuadamente a las demás entidades que participaron en el proceso administrativo de RFP. ■

Cumplido el requisito jurisdiccional, Choicetel presentó su escrito en oposición a la solicitud de revisión administrativa. Sostiene que el negocio propuesto es una modalidad del contrato de arrendamiento mediante el cual el dueño de un establecimiento —en este caso la Autoridad de los Puertos—, concede un espacio dentro de su propiedad a un proveedor de servicio de telefonía pública a cambio de un canon que generalmente depende de los ingresos generados. Razona que, toda vez que la Autoridad de los Puertos tiene facultad para otorgar contratos de arrendamiento sobre cualquiera de sus bienes muebles o inmuebles, no estaba obligada a celebrar una subasta, máxime cuando el Reglamento de Subasta expresamente releva del requisito al arrendamiento de concesiones.

Choicetel arguye que Pan American se sometió voluntariamente al proceso de RFP que ahora impugna por la única razón de que no resultó ser la empresa agraciada. Afirma que Pan American conocía los criterios de selección y el método de evaluación de las propuestas pues estos fueron incluidos en la carta de invitación cursada por la Autoridad de los Puertos. Arguye que el Comité Evaluador analizó las propuestas sometidas a base de los requerimientos promulgados en la RFP y la experiencia y peritaje de sus miembros, por lo que invoca deferencia por parte de los tribunales. ■

## II
Comencemos por examinar algunos preceptos jurídicos aplicables al caso.

### A. La adquisición de bienes y servicios por entidades gubernamentales: la subasta y el *request for proposal.*

El Gobierno tiene la responsabilidad de arraigo constitucional de velar por el uso y manejo apropiado de fondos públicos. Art. VI, Sec. 9, Const. E.L.A., L.P.R.A. Tomo 1, ed. 1999, pág. 410. Acorde con esa responsabilidad, se ha favorecido el procedimiento de subasta pública para la adquisición de bienes y servicios o la construcción de obras de calidad por entidades gubernamentales. Así pues, el procedimiento de subasta está revestido del más alto interés público. *Marina v. Comisión,* **2007 J.T.S. 83,** 170 D.P.R. ___ (2007); *Empresas Toledo, Inc. v. Junta de Revisión,* **2006 J.T.S. 147,** 168 D.P.R. ___ (2006); *Oliveras, Inc. v. Univeral Ins. Co.,* 141 D.P.R. 900, 931 (1996).

La Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (en adelante L.P.A.U.), Ley 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. sec. 2169, establece que los procedimientos relativos a las subastas serán diseñados por cada organismo administrativo. En ausencia de una

ley especial que regule los procedimientos de subastas aplicables a todas las compras gubernamentales, corresponde a cada agencia aprobar un reglamento que establezca el procedimiento y las guías a seguir en sus propias subastas. *Constructora Celta, Inc. v. A.P.*, 155 D.P.R. 820, 824 (2001); *RBR Const., S.E. v. A.C.*, 149 D. P.R. 836, 850 (1999).

En términos generales, el proceso de subasta entraña *"la preparación por parte del ente gubernamental de los pliegos de condiciones y especificaciones, el aviso de subasta al público, el recibo y posterior apertura pública de las propuestas selladas recibidas, la evaluación y estudio de las mismas por un comité evaluador, la recomendación del comité respecto la adjudicación de la buena pro, la adjudicación de ésta y la notificación a todos los licitadores." R&B Power v. E.L.A.*, **2007 J.T.S. 56**, 170 D.P.R. ___ (2007).

El objetivo principal del proceso de subasta es procurar que la adquisición de bienes y servicios así como la construcción de obras públicas se realicen al costo más bajo posible. Para lograr el contrato más ventajoso para el Gobierno, la agencia debe fomentar la competencia libre y transparente entre el mayor número de licitadores. *RBR Const., S.E. v. A.C.*, *supra*, págs. 848-849; *Oliveras, Inc. v. Universal Ins. Co.*, *supra*, pág. 927. Así también se evita el favoritismo, la corrupción, extravagancia y descuido de la agencia o corporación pública al otorgar los contratos y gastar los dineros del pueblo. *Hatton v. Mun. de Ponce*, 134 D.P.R. 1001, 1005 (1994); *Mar-Mol Co., Inc. v. Adm. Servicios Gens.*, 126 D.P.R. 864, 871 (1990); *Cancel v. Municipio de San Juan*, 101 D.P.R. 296, 300 (1973).

El Tribunal Supremo ha destacado el elemento de secretividad en la etapa anterior a la apertura de las licitaciones para evitar que un postor conozca la cotización de sus competidores con el fin de reducir los precios y obtener la buena pro. *Accumail v. Junta*, **2007 J.T.S. 75**, 170 D.P.R. ___ (2007); *RBR Const., S.E. v. A.C.*, *supra*, pág. 849.

Además del costo, existen otros factores de gran importancia que deben considerarse al adjudicar una subasta, a saber: que las propuestas sean conforme a las especificaciones de la agencia; la habilidad del postor para realizar y cumplir con el contrato; la responsabilidad económica del licitador, su reputación e integridad comercial. *C. Const. Corp. v. Mun. de Bayamón*, 115 D.P.R. 559, 563 (1984). Así pues, una vez sometidos los pliegos de licitación y abiertos éstos, asumiendo que todos cumplen con las especificaciones y condiciones establecidas en el pliego de subasta, se adjudicará al postor más bajo.

Recientemente, el Tribunal Supremo reconoció la validez de otro mecanismo disponible al Gobierno para la adquisición de bienes y servicios conocido como el requerimiento de propuestas (*Request for Proposal* o RFP). A pesar de que la subasta es el método tradicional para regular la adquisición de bienes y servicios, el RFP se ha reconocido como una alternativa muy utilizada cuando se trata de bienes o servicios especializados o que involucran asuntos altamente técnicos y complejos o cuando existen escasos competidores cualificados. *R&B Power v. E.L.A.*, *supra*.

El mecanismo de RFP permite más informalidad y un grado mayor de discreción para que la entidad pública pueda atender asuntos especiales. Contrario al proceso de subasta en el que se someten propuestas selladas de acuerdo al pliego de condiciones y especificaciones promulgado por la agencia, el RFP admite preguntas y sugerencias de parte de los licitadores para delinear una propuesta que se ajuste a las necesidades particulares de la agencia. En esencia, se trata de un proceso de negociación entre la agencia y los licitadores que cuentan con un grado de conocimiento especializado.

La discreción reconocida permite a la agencia o entidad gubernamental mayor flexibilidad al seleccionar un proveedor de productos o servicios, pues puede tomar en consideración, además del precio, una multiplicidad de factores que redunden en el mayor beneficio para el Gobierno. Podría llegarse el extremo de que se seleccione una propuesta más onerosa, pero que provea ventajas tecnológicas, frente a una propuesta más

económica, pero que tiene limitaciones tecnológicas.

La selección dependerá de los criterios esbozados por la agencia en la invitación a someter propuestas —o enmiendas apropiadas que sufra el requerimiento original como resultado del proceso de negociación— y el peso que se asigne a cada uno. 1 Government Contract Awards: Negotiation and Sealed Bidding §2:6. El requerimiento no tiene que incluir el método de evaluación que se utilizará para evaluar las propuestas sometidas. La enumeración de los factores a evaluarse y su importancia en relación con otros factores garantizan a los licitadores igualdad de condiciones al someter sus propuestas.

Nuestro Tribunal Supremo ha expresado que a pesar de que las subastas son procedimientos informales, una vez se ha tomado la decisión administrativa, la parte adversamente afectada tiene derecho a solicitar la revisión judicial a tenor con el ordenamiento dispuesto en la L.P.A.U., *supra. Velázquez v. Adm. de Terrenos*, 153 D.P.R. 548, 555-556 (2001); *L.P.C. & D., Inc. v. A.C.*, 149 D.P.R. 869, 877 (1999). Asimismo, aun cuando el procedimiento de RFP es más informal que el proceso de subasta, no se le puede negar a aquellos que participan del proceso el derecho que tienen a cuestionar la decisión de la agencia mediante revisión judicial. Existe, pues, una presunción a favor de la revisión judicial que impone a la agencia el deber de notificar adecuadamente sus decisiones conforme a los principios esbozados en la sección 3.16 de la L.P.A.U., 3 L.P.R. A. sec. 2166. *R&B Power, Inc. v. E.L.A., supra.*

El derecho a solicitar revisión judicial se hace efectivo sólo si la parte adversamente afectada por una decisión administrativa conoce la decisión tomada y sus fundamentos. *Pta. Arenas Concrete, Inc. v. J. Subastas*, 153 D.P.R. 733, 741 (2001); *L.P.C. & D., Inc. v. A.C., supra*, pág. 878; *RBR Const., S.E. v. A.C., supra*, pág. 855. En consideración a lo anterior, tanto la L.P.A.U. como la jurisprudencia del Tribunal Supremo imponen a las agencias administrativas la obligación de notificar a todos los partícipes del proceso administrativo la decisión alcanzada.

El requisito de notificación —consustancial al debido proceso de ley—, promueve que la agencia adopte una decisión cuidadosa y razonada dentro de los parámetros de su autoridad y discreción. Además, permite a los tribunales ejercer su función revisora a fin de determinar si la decisión administrativa fue arbitraria, caprichosa o irrazonable sin arrogarse funciones que corresponden propiamente a las agencias administrativas. *L.P.C. & D., Inc. v. A.C., supra*, pág. 879.

Con respecto al procedimiento de RFP, en la jurisdicción federal se ha establecido que la agencia debe notificar su decisión final por escrito dentro de los siguientes tres días. Se exige, además, el cumplimiento con otros requisitos similares a los establecidos por la L.P.A.U. y la jurisprudencia del Tribunal Supremo en cuanto a la notificación de subastas. La notificación en un procedimiento informal de RFP debe incluir como mínimo: la cantidad de empresas invitadas a someter una propuesta; la cantidad de propuestas recibidas; el nombre y dirección del licitador agraciado; una breve descripción de los artículos o servicios seleccionados, cantidades y precios incluidos en la propuesta seleccionada; y una explicación breve de las razones por las cuales no se seleccionó la propuesta específica del licitador a nombre de quien se emite la notificación. 48 CFR §15.503(b). Debe incluir, además, una expresión sobre el derecho que tienen las partes a cuestionar la decisión de la agencia mediante la solicitud de reconsideración y revisión judicial y el término disponible para ello. *R&B Power v. E. L.A., supra*; *L.P.C.& D., Inc. v. A.C., supra*, pág. 879.

## B. La Ley Orgánica de la Autoridad de los Puertos

La Ley 125 de 7 de mayo de 1942, según enmendada, 23 L.P.R.A. sec. 331 *et seq.*, creó la entidad llamada Autoridad de los Puertos, la cual se constituyó como una corporación pública e instrumentalidad gubernamental del Estado Libre Asociado de Puerto Rico. 23 L.P.R.A. sec. 333. Entre los fines públicos para la cual fue creada se encuentra la administración de los aeropuertos y frentes portuarios de la isla con el objetivo de impulsar el

bienestar general y aumentar el comercio y la prosperidad. 23 L.P.R.A. sec. 336 (Sup. 2006).

Para llevar a cabo la gestión encomendada, la Asamblea Legislativa delegó en la Autoridad de los Puertos ciertos derechos y poderes. Entre ellos, resulta pertinente a la discusión, la facultad para "*arrendar y disponer de cualquier otro modo de cualquier o todo tipo de equipo, material, servicio, efecto y de aquellos otros bienes muebles e inmuebles que la Autoridad estime necesarios, propios, incidentales o convenientes en conexión con sus actividades*". 23 L.P.R.A. sec. 336(i) (Sup. 2006).

Por otro lado, el Artículo 11 de la Ley 125, *supra,* 23 L.P.R.A. sec. 341, establece que todas las compras y contratos de suministros o servicios de la Autoridad de los Puertos deberán hacerse mediante anuncio de subasta hecho con suficiente antelación a la fecha de apertura de pliegos de proposiciones para que se asegure el adecuado conocimiento y oportunidad de concurrencia. El Artículo 11 dispone, además, que cuando la suma estimada para la compra no exceda de $10,000 y cuando el valor de la obra de construcción no exceda de $25,000 podrá efectuarse la misma sin anuncio de subasta, aunque la Autoridad de los Puertos deberá solicitar cotizaciones de, por lo menos, 3 fuentes de suministros. 23 L.P.R.A. sec. 341.

El Artículo 11 enumera una serie de circunstancias en las cuales la Autoridad de los Puertos no viene obligada a llevar a cabo anuncios de subasta ni a realizar requerimientos de cotizaciones:

*"(1) cuando se requiera la inmediata entrega de materiales, efectos y equipo, ejecución de servicios u obras de construcción debido a una emergencia según definido este término en las secs. 331 et seq. de este título;*

*(2) cuando se necesiten piezas de repuestos, accesorios, equipo o servicios suplementarios para efectos o servicios previamente suministrados o contratados;*

*(3) cuando se requieren servicios o trabajos de profesionales o de expertos y la Autoridad estime que en interés de una buena administración, tales servicios o trabajos deban contratarse sin mediar tales anuncios;*

*(4) cuando los precios no están sujetos a competencia porque no haya más que una sola fuente de suministro o porque estén regulados por la ley; o*

*(5) cuando la Autoridad haya celebrado dos (2) subastas idénticas en especificaciones, términos y condiciones dentro de un período de tiempo no mayor de seis (6) meses, a partir de la fecha de apertura de la primera, siempre que dichas subastas hayan resultado desiertas. En tales casos, la compra de materiales, efectos o equipo, o la obtención de tales servicios podrán hacerse en mercado abierto en la forma corriente en las prácticas comerciales. Al comparar proposiciones y hacer adjudicaciones, se dará debida consideración a aquellos factores (además de si el postor ha cumplido con las especificaciones) tales como el precio más bajo; la habilidad del postor para realizar trabajos de construcción de la naturaleza envuelta en el contrato bajo consideración; la calidad y adaptabilidad relativas de los materiales, efectos, equipo o servicios; la responsabilidad económica del licitador, y su pericia, experiencia, reputación de integridad comercial y habilidad para prestar servicios de reparación y conservación; y el tiempo de entrega o de ejecución que se ofrezca. La Autoridad podrá decretar reglamentos para la presentación de licitaciones."*

El 10 de agosto de 1990, la Autoridad de los Puertos adoptó un Reglamento de Subastas, Reglamento 4294. El reglamento tiene como propósito el establecer las normas a seguir en las subastas para la compra de materiales, equipo, mobiliario, suministro de servicios, contratación de proyectos de construcción o de mantenimiento y venta de propiedad excedente o abandonada.

En la Sección 900.7(c), el referido reglamento dispone lo siguiente:

"*C. Subasta de Concesiones:*

*No se requerirá la celebración de una subasta para el arrendamiento de concesiones, excepto que el Director Ejecutivo entienda necesaria la celebración de tal subasta en protección de los mejores intereses de la Autoridad. No obstante, las áreas operacionales podrán recomendar al Director Ejecutivo la celebración de subastas para el arrendamiento de las concesiones.*"

Pasemos a considerar el señalamiento de error presentado por Pan American en su escrito de revisión.

### III

Afirma Pan American que la Autoridad de los Puertos erró al no celebrar una subasta para la contratación de un proveedor de servicios de telefonía pública en el Aeropuerto Internacional Luis Muñoz Marín y en los Muelles Turísticos del Viejo San Juan. En oposición comparecieron la Autoridad de los Puertos y Choicetel. La Autoridad de los Puertos alegó que por tratarse de un servicio a ser provisto por profesionales o expertos, en el presente caso se activa la antes citada excepción número (3) del Artículo 11, *supra,* por lo que no venía obligada a celebrar una subasta. De otro lado, ambas sostienen que el proceso RFP celebrado tenía como objetivo la *"selección de un concesionario"* y por ello resultaba innecesaria la celebración de una subasta, conforme dispone la Sección 900.7(c) del Reglamento 4294, *supra.*

Nos corresponde, en primer lugar, determinar si el negocio jurídico a celebrarse entre la Autoridad de los Puertos y el licitador agraciado era un contrato de servicios o el arrendamiento de una concesión.

La carta invitación enviada por la Autoridad de los Puertos establece el propósito del requerimiento de propuestas: la celebración de un contrato para la operación de un negocio de servicio de telefonía pública en las facilidades del Aeropuerto Internacional Luis Muñoz Marín y los muelles de turismo de San Juan a cambio de una participación en las ganancias netas. Lo que se propone es la celebración de un negocio jurídico por el cual la Autoridad de los Puertos cede a una entidad privada —el mejor postor—, el uso de sus facilidades para la gestión de un negocio de servicio. Toda vez que el requisito de subasta para la adquisición de suministros o servicios no aplica a los contratos de arrendamientos como en el caso de marras, concluimos que la Autoridad de los Puertos no estaba obligada a celebrar una subasta. Conforme se ha interpretado por el Tribunal Supremo, el mecanismo de RFP es válido para la prestación de servicios especializados.

Los hechos del presente caso requerían a la Autoridad de los Puertos seleccionar la mejor oferta para proveer servicios de telefonía pública. El expediente refleja que la Autoridad de los Puertos se beneficiará o afectará económicamente de acuerdo a la selección que haga. No cabe duda que el recibir menos ingresos de los apropiados puede lesionar la política pública de protección a la estabilidad financiera de la Autoridad de los Puertos y menoscabar el máximo beneficio económico de sus bienes. Por tanto, la Autoridad de los Puertos debe cumplir con los requisitos mínimos establecidos para el proceso de RFP de manera que se logre la política pública esbozada, se garantice la transparencia del proceso efectuado y se protejan los fondos públicos y el debido proceso de ley a los participantes. Después de todo, el RFP posee características adjudicativas, iguales al proceso de subasta tradicional. *R&B Power, Inc. v. E.L.A., supra.*

Concluimos que la Autoridad de los Puertos podía utilizar el RFP, pero ello no resuelve el caso. Debemos responder la siguiente interrogante: ¿Cumplió la Autoridad de los Puertos con el requisito de notificación adecuada de la decisión administrativa de adjudicación de RFP? Resolvemos en la negativa. La carta enviada a los licitadores perdidosos que antes citamos no incluye los elementos requeridos para una notificación de la adjudicación de RFP, a saber, la cantidad de empresas invitadas a someter una propuesta; la cantidad de propuestas recibidas; el nombre y dirección del licitador agraciado; una breve descripción de los artículos o servicios seleccionados, cantidades y precios incluidos en la propuesta seleccionada; y una explicación breve de las razones por las cuales no se seleccionó la propuesta específica del licitador a nombre de quien se emite la

notificación; una expresión sobre el derecho que tienen las partes a cuestionar la decisión de la agencia mediante la solicitud de reconsideración y revisión judicial; y el término disponible para ello. Lo anterior, además de encontrar apoyo en la L.P.A.U. y en la jurisprudencia del Tribunal Supremo, constituye una exigencia del debido proceso de ley.

Así pues, aunque el RFP es un proceso más informal, no puede negársele a las partes del proceso administrativo el derecho a cuestionar la decisión final de la agencia mediante la presentación de una revisión judicial ante el Tribunal de Apelaciones. Además, que la decisión incluya elementos básicos de sus fundamentos de manera que el proceso de revisión judicial sea eficaz.

Además, la naturaleza de los intereses envueltos como es el uso de los recursos gubernamentales y la exigencia de una competencia abierta, transparente y competitiva, necesaria en toda acción gubernamental como la aquí envuelta, conlleva el derecho a la revisión judicial. Nada de ello es posible sin la notificación fundamentada de la decisión administrativa.

**IV**

Por los fundamentos antes expuestos, se revoca la determinación recurrida. Se devuelve el expediente a la Autoridad de los Puertos para que notifique su decisión final a los participantes conforme a lo aquí resuelto.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria.

Lcda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones