# 2006 DTA 46

**TRIBUNAL DE CIRCUITO DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN
PANEL VI**

LT AUTOMATION, INC.
Recurrente

v.

AUTORIDAD DE ENERGÍA ELÉCTRICA DE PUERTO RICO; PHOENIX INDUSTRIAL SALES;
PREMSCO, INC.; RG ENGINEERING, INC.; COMECO, INC.; ARG PRECISION CORP: SOLARES & CO.;
TECHNICAL TRADE AND SALES, INC.
Recurridas

Núm. KLRA-05-00181

San Juan, Puerto Rico, a 8 de febrero de 2006

Panel integrado por su Presidente, el Juez Urgell Cuebas,
y los Jueces Gierbolini y Rodríguez Muñiz

Rodríguez Muñiz, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

El 28 de marzo de 2005, LT Automation, Inc. (en adelante, la Recurrente) presentó recurso de revisión administrativa. Solicitó la revisión de la determinación tomada por la Autoridad de Energía Eléctrica (en adelante, AEE) de adjudicar la buena pro de la Subasta Núm. Q-014842, a favor de PREMSCO, Inc. (en adelante, PREMSCO).

Por las razones que expresamos a continuación, se confirma la determinación de la AEE.

**I**

La AEE publicó la invitación de subasta Núm. Q-0114842 para la compra e instalación de cuatro (4) secadores de aire comprimido para las unidades #1 a #6 de la Central Termoeléctrica Costa Sur en Guayanilla. En la referida invitación se indicaban las especificaciones, términos y condiciones de la subasta. Entre éstos, la descripción de los equipos solicitados. En lo pertinente al caso de autos, bajo el renglón de *"Design Details"* se requería lo siguiente:

*"F. Functions shall be controlled by a digital microprocessor that allows the user to view dryer regeneration status, temperature and dryer sequence time in minutes. Actual dew point of the outlet air should be monitored (and field adjustable) to delay tower shift-over until the drying bed is saturated to the pre-set dew point level. Must include a full load control that changes constant purge to a pulse purge so that dew point is maintained by a repeated sequence of short purge periods followed by repressurization and extended hold periods using heated dry air ...".*

El 17 de junio de 2004 se celebró la apertura de la subasta. En la misma participaron ocho (8) licitadores. Éstos fueron: PREMSCO, Inc.; RG Engineering, Inc.; Technichal Trade and Sales, Inc.; Comeco, Inc.; ARG Precision Corp.; Solares & Co. Inc.; LT Automation, Inc. y Phoenix Industrial Sales, Inc. Junto a su propuesta, la Recurrente incluyó una carta en la que indicó que *"toda la literatura ofrecida es para propósitos ilustrativos solamente, de existir alguna discrepancia entre la literatura y las especificaciones, cumpliremos con éstas últimas."* (Traducción nuestra)

Posteriormente, mediante comunicación con fecha de 29 de julio de 2004, el Sr. Félix Martínez Méndez, Gerente de Compras de la AEE, le solicitó a la Recurrente literatura técnica original y dibujos del equipo propuesto. La misma le fue suministrada el 3 de agosto de 2004. Junto a ésta, la Recurrente incluyó una comunicación en la que expresaba que *"La literatura aquí incluida es una general. Cualquier nota en la literatura aquí incluida no toma presedente [sic] sobre las especificaciones, términos y condiciones de éstas últimas."*

Así las cosas, el 4 de octubre de 2004, notificada el 6 de octubre de 2004, el Comité de Subastas de la AEE adjudicó la buena pro de la subasta a PREMSCO por ser el postor más bajo evaluado que cumplió con todas las

especificaciones, términos y condiciones de la subasta.

Por su parte, la Recurrente fue declarada licitador no respondiente por no cumplir con las especificaciones técnicas de la subasta. Específicamente, la AEE señaló que el equipo cotizado por la Recurrente no cambia de purga constante a purga por pulsos. Además, que el equipo opcional propuesto tampoco cumplía con el requisito de contar con un calentador de aire, según solicitado en las especificaciones.

Inconforme con dicha adjudicación, el 18 de octubre de 2004, la Recurrente presentó Moción de Reconsideración ante la AEE. Adujo que incidió ésta al declarar su propuesta no respondiente, ya que su propuesta cumplía con todas las especificaciones técnicas, términos y condiciones de la AEE y no toma excepciones a las mismas. Además, que la especificación incluida en la invitación de subasta bajo la letra F, del renglón de *"Design Details"*, referente a la purga, era restrictiva debido a que la misma está patentizada y es utilizada exclusivamente por un sólo manufacturero de secadores de aire.

El 28 de octubre de 2004, la AEE notificó que acogía la referida reconsideración. Posteriormente, el 15 de marzo de 2005, ésta la declaró no ha lugar. Expuso, en síntesis, que los planteamientos de la Recurrente no le eran persuasivos. Además, que *"los que evaluaron las propuestas, que al fin y al cabo son los que cuentan con los conocimientos y experiencia necesarios para dilucidar esa imprecisión manifiesta, determinaron que LT Automation no cumplió con varios de los requisitos como el de control para cambiar de purga constante a purga por pulsos, así como la ausencia de los calentadores o 'heaters' requeridos."* Por último, sostuvo que la literatura técnica y las explicaciones suplementarias que presentó la Recurrente no fueron claras, indicando ésta que *"cualquier nota en la literatura aquí incluida no toma precedente sobre las especificaciones, términos y condiciones de esta subasta."*

En vista de lo anterior, el 28 de marzo de 2005, la Recurrente presentó el recurso de revisión administrativa que nos ocupa. En el mismo indicó los siguientes señalamientos de error:

*"A. Erró la AEE al determinar que la propuesta de la recurrente LT Automation no era respondiente a las especificaciones de la subasta por cuanto el equipo propuesto por ésta no tiene la capacidad de cambiar de purga constante a purga por pulsos.*

*B. Erró la AEE al determinar que la propuesta de la recurrente LT Automation no era respondiente a las especificaciones de la subasta cuando el equipo propuesto por la recurrente tiene la capacidad de activarse automáticamente dependiendo del nivel de humedad.*

*C. Erró la AEE al no determinar que la propuesta de la recurrente LT Automation cumplía sustancialmente con las especificaciones de la subasta.*

*D. Erró la AEE y abusó de su discreción al descartar la propuesta de la recurrente cuando la misma era no tan sólo igual o superior al equipo especificado para la subasta sino más baja en términos económicos."*

Así las cosas, el 20 de abril de 2005, notificada el 21 de abril de 2005, le concedimos a la parte recurrida un término de treinta (30) días para presentar su alegato. En vista de ello, el 23 de mayo de 2005, PREMSCO presentó Alegato en Oposición a Revisión Administrativa. Sostuvo, en síntesis, que la AEE no actuó de forma arbitraria o caprichosa al adjudicar la subasta. Asimismo, que el requisito impuesto por ésta de que los secadores tuvieran un sistema de purga en pulsos no es uno restrictivo, ya que el mismo podía haber sido cumplido por varios licitadores, no solamente por PREMSCO.

El 23 de agosto de 2005, le ordenamos a la Recurrente que nos acreditara la fecha en que la AEE acogió la solicitud de reconsideración presentada por ésta. Asimismo, que nos remitiera copia de la Carta de Adjudicación

emitida por la AEE el 4 de octubre de 2004, incluyendo la certificación de notificación.

En cumplimiento a lo anterior, el 28 de agosto de 2005, la Recurrente nos remitió los documentos que le fueran requeridos. ■

## II

Antes de entrar en los méritos del caso es importante tener presente que le *"toca a los tribunales el deber de ser guardianes de su propia jurisdicción"*, no siendo óbice para ello el hecho de que la cuestión no se haya planteado. *Soc. de Gananciales v. A.F.F.,* 108 D.P.R. 644, 645 (1979).

Con relación a los procedimientos administrativos de adjudicación de subastas, la Asamblea Legislativa ha demostrado un interés particular en que los procedimientos adjudicativos de subastas se hagan de manera expedita. *Perfect Cleaning Services, Inc. v. Centro Cardiovascular de Puerto Rico y del Caribe*, 162 D.P.R. __, **2004 JTS 143**, a la página 141, Opinión de 16 de agosto de 2004. Los procedimientos de subasta son informales, la reglamentación de las normas y términos de dichos procedimientos se delegó a las agencias individualmente. *Id.* La L.P.A.U. sólo regula formalmente la fase de reconsideración y revisión judicial, y aún así dispone términos considerablemente más cortos que los contemplados para la reconsideración y revisión judicial de los procedimientos administrativos ordinarios. *Id.*

La Sección 3.19 de la L.P.A.U., *supra*, 3 L.P.R.A. sec. 2169, regula el procedimiento y el término para solicitar reconsideración. A tal efecto, dicho precepto de ley dispone que:

*"Los procedimientos de adjudicación de subastas serán procedimientos informales; su reglamentación y términos serán establecidos por las agencias. La parte adversamente afectada por una decisión podrá, dentro del término de diez (10) días a partir de la adjudicación de la subasta, presentar una moción de reconsideración ante la agencia o la entidad apelativa de subastas, de existir una en la agencia, según sea el caso. La agencia o la entidad deberá considerarla dentro de los diez (10) días de haberse presentado. Si se tomare alguna determinación en su consideración, el término para instar el recurso de revisión judicial empezará a contarse desde la fecha en que se archiva en autos una copia de la notificación de la decisión de la agencia o la entidad apelativa resolviendo la moción. Si la agencia o la entidad apelativa dejare de tomar alguna acción con relación a la moción de reconsideración dentro de los diez (10) días de haberse presentado, se entenderá que ésta ha sido rechazada de plano, y a partir de esa fecha comenzará a correr el término para la revisión judicial."*

Más adelante, la Sección 4.2 de la L.P.A.U., 3 L.P.R.A. sec. 2172, dispone en lo aquí pertinente que:

*"En los casos de impugnación de subasta, la parte adversamente afectada por una orden o resolución final de la agencia, o de la entidad apelativa de subastas, según sea el caso, podrá presentar un recurso de revisión ante el Tribunal de Apelaciones dentro de un término de diez (10) días contados a partir del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o la entidad apelativa, o dentro de diez (10) días de haber transcurrido el plazo dispuesto por la sec. 2169 de este título. La mera presentación de un recurso de revisión judicial al amparo de esta sección no tendrá el efecto de paralizar la adjudicación de la subasta impugnada."*

Por otra parte, el Reglamento Para los Procedimientos de Adjudicación de Querellas de la Autoridad de Energía Eléctrica de Puerto Rico, Núm. 6710, de marzo de 2003, en la Sección VI, el Artículo M, inciso (6), dispone que *"[l]os términos aplicables para la reconsideración de adjudicación de subastas se rigen por las disposiciones del Reglamento de Subasta vigente"*.

Examinado el Reglamento de Subastas de la AEE, Núm. 6646, de junio de 2003, encontramos que el Capítulo IV, Sección 1, Artículo C, inciso (1), establece que la moción de reconsideración deberá ser presentada *"dentro*

*del término de diez (10) días contados a partir de la fecha de la carta de notificación de la adjudicación de la subasta concernida".* De otra parte, la Sección 2, en el Artículo B dispone sobre la resolución de la moción de reconsideración, en lo pertinente, que:

*"1....*

*2. ...*

*3. El (La) Juez Administrativo (a) a cargo de resolver la Moción de Reconsideración radicada deberá considerar la misma dentro del término de (10) días a partir de la fecha de su radicación ante la Secretaría de Procedimientos Adjudicativos de la Autoridad. Si la rechaza de plano o no actúa dentro de este término de diez (10) días, el solicitante de la Moción de Reconsideración podrá solicitar revisión judicial en conformidad con la Sec. 4.2 de la Ley Núm. 170 del 12 de agosto de 1988, según enmendada. El término para solicitar revisión judicial comenzará a contarse desde que se notifique dicha denegatoria o desde que expire el término de diez (10) días antes indicado, según sea el caso.*

*4. Si dentro del término de diez (10) días a partir de la fecha de la radicación de la Moción de Reconsideración ante la Secretaría de Procedimientos Adjudicativos de la Autoridad, el Juez Administrativo acoge para resolución dicha Moción de Reconsideración o toma alguna determinación en la consideración de la misma, el término para solicitar revisión judicial, conforme con las disposiciones de la Ley Núm. 170 del 12 de agosto de 1988, según enmendada, comienza a contar desde la fecha en que se archiva en autos copia de la notificación de la resolución en la que se resuelve definitivamente la moción de Reconsideración.*

*5. La Moción de reconsideración es un requisito jurisdiccional para poder solicitar revisión judicial, conforme con las disposiciones de Ley Núm. 170 del 12 de agosto de 1988, según enmendada.*

*...".*

En el caso de marras, el 18 de octubre de 2004, la Recurrente presentó oportunamente una moción de reconsideración ante la AEE. El término para que dicha agencia administrativa acogiera la misma era de diez (10) días, es decir, vencía el 28 de octubre de 2004.

Así las cosas, el 28 de octubre de 2004, la AEE emitió notificación en la que acogió la moción de reconsideración presentada por la Recurrente. Inclusive, en dicha notificación la agencia señaló que la decisión final sobre la reconsideración sería notificada *"en o antes del término de diez (10) días laborables a partir del 28 de octubre de 2004".* ▪ Sin embargo, no fue hasta el 15 de marzo de 2005, que la A.E.E. dicha agencia declaró *"no ha lugar"* la moción de reconsideración.

Conforme al Reglamento de Subastas de la AEE, el término para solicitar revisión judicial comienza a decursar desde la fecha en que se archiva en autos copia de la notificación de la resolución en la que se resuelve definitivamente la moción de reconsideración. Lo anterior depende de que la agencia haya acogido para su resolución la moción de reconsideración o haya tomado alguna determinación en la consideración de la misma en el término de diez (10) días a partir de la fecha de la radicación dicha moción.

A tenor con lo anterior, el término para recurrir ante este tribunal comenzó a decursar a partir del 15 de marzo de 2005, cuando se notificó la resolución en la que la AEE declaró *"no ha lugar"* la moción de reconsideración. Ello así, la Recurrente tenía diez (10) para recurrir ante este Tribunal. Dicho término vencía el viernes 25 de marzo de 2005, día en que se conmemoró el Viernes Santos. Ello así, el término para solicitar revisión judicial se extendió hasta el lunes 28 de marzo de 2004, fecha en la Recurrente presentó el recurso de revisión que nos ocupa.

## III

Ahora bien, reiteradamente, el Tribunal Supremo de Puerto Rico ha resuelto que las decisiones de los organismos administrativos merecen la mayor deferencia judicial. Esta deferencia se debe a que son ellas las que cuentan con el conocimiento experto y con la experiencia especializada de los asuntos que les son encomendados. *Otero Mercado v. Toyota de Puerto Rico Corp.*, 163 D.P.R. ____, **2005 JTS 13**, a las páginas 684-685, Opinión de 3 de febrero de 2005; *Rebollo Vda. de Liceaga v. Yiyi Motors, Motor Ambar, Inc.*, 161 D.P.R.____, **2004 JTS 4**, a las páginas 501-502, Opinión de 13 de enero de 2004. Al momento de revisar una decisión administrativa el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. *Rebollo Vda. de Liceaga v. Yiyi Motors, Motor Ambar, Inc., supra*, a las páginas 501-502.

Utilizando un criterio de razonabilidad y deferencia, los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo, *"si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad."* *Domínguez Talavera v. Caguas Expressway Motors, Inc.*, 148 D.P.R. 387, 397 (1999); *Metropolitana S.E. v. A.R.P.E.*, 138 D.P.R. 200, 213 (1995); *Facultad para las Ciencias Sociales Aplicadas, Inc. v. Consejo de Educación Superior*, 133 D.P.R. 521, 532 (1993).

La evidencia sustancial es *"aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión."* *Hilton Hotels v. Junta de Salario Mínimo*, 74 D.P.R. 670, 687 (1953); *Misión Ind. P.R. v. J.P.,* 146 D.P.R. 64, 131 (1998). Debido a que las determinaciones del foro administrativo tienen que basarse en evidencia sustancial, la parte que las impugne tiene que convencer al tribunal de que la evidencia en la cual se apoyó la agencia para formular tales determinaciones no es sustancial. *Misión Ind. P.R. v. J.P., supra*, a la página 131. Debe demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. *Rebollo Vda. de Liceaga v. Yiyi Motors, Motor Ambar, Inc., supra*, a la página 501.

Si la parte afectada, en la solicitud de revisión, no demuestra la existencia de esa otra prueba que sostiene que la actuación de la agencia no está basada en evidencia sustancial o que reduzca el valor de la evidencia impugnada, el tribunal respetará las determinaciones de hechos y no deberá sustituir el criterio de la agencia por el suyo. *Ramírez v. Departamento de Salud*, 147 D.P.R. 901, 906-907 (1999). Las determinaciones de hechos de organismos y agencias *"tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas."* *Facultad para las Ciencias Sociales Aplicadas, Inc. v. Consejo de Educación Superior, supra*, a la página 532.

El tribunal revisor hará una evaluación a la luz de la totalidad del expediente. Confrontado con un resultado distinto del obtenido por la agencia, el tribunal debe determinar si la divergencia responde a un ejercicio razonable de la discreción administrativa fundamentado, por ejemplo, en una pericia particular, en consideraciones de política pública o en la apreciación de la prueba que tuvo ante su consideración. El tribunal podrá sustituir el criterio de la agencia por el propio sólo cuando no pueda hallar una base racional para explicar la decisión administrativa. *Misión Ind. P.R. v. J.P., supra*, a la página 134.

Podemos decir que la deferencia reconocida a la decisión de una agencia administrativa, cede en las siguientes circunstancias: (1) cuando no está basada en evidencia sustancial, (2) cuando el organismo administrativo ha errado en la aplicación de la ley, *Salcedo v. Policía de Puerto Rico*, 143 D.P.R. 85, 95 (1997), y (3) cuando ha mediado una actuación irrazonable o ilegal. Si el tribunal no se encuentra ante alguna de estas situaciones, aunque exista más de una interpretación razonable de los hechos, debe sostener la que seleccionó la agencia encargada. *"La cuestión es si la determinación de la agencia es razonable y no si la agencia logró la determinación correcta del hecho o los hechos."* Demetrio Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, Bogotá, Colombia, 2da. Ed., 2001, a la página 543.

La deferencia judicial en la revisión de las determinaciones administrativas no conlleva la renuncia de los tribunales a su función revisora. Tan sólo implica que dicha función es de carácter limitado, la cual sólo se ejercerá en los casos apropiados. Tal intervención sólo estará justificada cuando la agencia obre de manera arbitraria, ilegal, en forma tan irrazonable que su actuación constituya un abuso de discreción, cuando la determinación no se sostenga mediante prueba sustancial, o cuando se haya cometido un error en la aplicación de la ley. *Fuertes v. A.R.P.E.,* 134 D.P.R. 947, 953 (1993).

Respecto a las subastas, por otro lado, se ha resuelto que éstas tienen el objetivo principal de obtener el mejor contrato posible para el Estado. *Mármol Co. Inc. v. Adm. Servicios Gens.,* 126 D.P.R. 864, 871 (1990). Las mismas van dirigidas a lograr eficacia, honestidad y corrección para proteger el interés público a través de la competencia libre y transparente entre licitadores. *RBR Construction S.E. v. Autoridad de Carreteras,* 149 D. P.R. 836, 849 (1999); *Hatton v. Municipio de Ponce,* 134 D.P.R. 1001, 1005 (1994); *Mármol Co. Inc. v. Adm. Servicios Gens., supra.*

Además, se ha reiterado que a pesar de que las subastas son procedimientos informales *sui generis* con ciertas características adjudicativas, la parte adversamente afectada por la determinación tiene derecho a la revisión judicial de acuerdo al ordenamiento dispuesto en la Ley de Procedimiento Administrativo Uniforme (LPAU). *Velázquez v. Administración de Terrenos,* 153 D.P.R. 548, 555-556 (2001). Ello debido, desde luego, a que la adjudicación de las subastas se encuentra subordinada a los principios de derecho administrativo antes expuestos.

Así pues, los tribunales han exigido que la agencia incluya los fundamentos sobre los que descansa su determinación, de modo que el tribunal pueda ejercer su función revisora. Véase *Rivera Santiago v. Srio. de Hacienda,* 119 D.P.R. 265, 272 (1987); *Godreau & Co. v. Com. Servicio Público,* 71 D.P.R. 649, 655-657 (1950). De igual forma, se ha resuelto que las determinaciones administrativas deben ser finales para poder ser revisadas por los tribunales. *Constructora Celta v. Autoridad de los Puertos,* 155 D.P.R. ____ (2001), **2002 J.T. S. 1**, a la página 546, Opinión de 10 de diciembre de 2001.

En *L.P.C.& D., Inc. v. Autoridad de Carreteras y Transportación,* 149 D.P.R. 869, 879 (1999), se dijo que: *"[L]a notificación de la adjudicación de una subasta debe ser fundamentada, al menos de una forma sumaria y sucinta. Por lo menos debe incluir la siguiente información: los nombres de los licitadores en la subasta y una síntesis de sus propuestas; los factores o criterios que se tomaron en cuenta para adjudicar la subasta; los defectos, si alguno, que tuvieran las propuestas de los licitadores perdidosos, y la disponibilidad y el plazo para solicitar la reconsideración y la revisión judicial."*

En particular, la adjudicación de subastas está regulada por la sección 3.9 de L.P.A.U., 3 L.P.R.A. sec. 2169. Dicha sección dispone que las subastas se regirán por procedimientos informales y que su reglamentación y términos serán establecidos por cada una de las agencias, quienes tendrán discreción para adoptar reglamentos sobre el procedimiento a seguir para las respectivas subastas.

Cada reglamento debe incluir en particular los factores específicos que se han de utilizar para evaluar las propuestas de subastas. Entre los más reconocidos por la jurisprudencia se encuentran los siguientes: (1) que las propuestas sean conformes a las especificaciones de la subasta; (2) la habilidad del postor para realizar y cumplir con el contrato; (3) la responsabilidad económica del licitador, su representación e integridad comercial, entre otros. *Continental Const. Corp. v. Municipio de Bayamón,* 115 D.P.R. 559 (1984).

Por otro lado, la revisión judicial de subastas se rige por principios similares a los que gobiernan la revisión de procedimientos análogos celebrados ante las agencias. En estos últimos casos, según se dijo anteriormente, la facultad de revisión de los tribunales es limitada. En tal sentido, el Tribunal Supremo de Puerto Rico ha establecido que las decisiones de los organismos administrativos se presumen correctas; mereciendo así la

deferencia de los tribunales. De tal suerte que la revisión judicial de las mismas se circunscribe a determinar si la agencia, en cada caso particular, actuó de manera arbitraria o ilegal; o de forma tan irrazonable, que su actuación constituyó un abuso de discreción. *Mun. de San Juan v. J.C.A.*, 149 D.P.R. 263, 279 (1999); *Franco v. Dpto. de Educación*, 148 D.P.R. 703, 709 (1999).

El Reglamento 6646 de 25 de junio de 2003, también conocido como el Reglamento de Subastas de la Autoridad de Energía Eléctrica (en adelante, el Reglamento), instituye guías uniformes para las subastas con el fin de adquirir bienes y servicios cuyo costo excede de cincuenta mil dólares ($50,000). Además, el Reglamento establece guías para las actuaciones de los comités de subastas de la AEE.

En lo pertinente, éste establece, respecto a la adjudicación de las subastas, que en casos de adquisición de bienes o servicios, la misma se adjudica al postor más bajo evaluado cuya oferta responda sustancialmente a las especificaciones, términos y condiciones establecidos en la Invitación a la Subasta. Sección 9, Artículo A del Reglamento. Asimismo, se indica que antes de adjudicar una subasta de este tipo, se considerarán los siguientes factores: cumplimiento con las especificaciones, habilidad del licitador para suplir los bienes o servicios requeridos en la subasta bajo consideración, la calidad de los materiales, equipos o servicios ofrecidos y su adaptabilidad a las especificaciones establecidas por la AEE. Por último, se advierte que la desviación sustancial de una oferta con respecto a los términos de pago, entrega, remoción, garantías, responsabilidad civil y demás términos y condiciones que se establecen en la Invitación a la Subasta conllevará la declaración de dicha oferta como una no respondiente.

**IV**

Ante el incumplimiento de la propuesta de la Recurrente con las especificaciones requeridas en el pliego de la subasta, la AEE determinó que la misma no fue respondiente. Sin embargo, ante nos la Recurrente sostiene que su propuesta fue respondiente. Entendemos que la agencia, con su vasta experiencia y especialización, se encuentra, de ordinario, en mejor posición que nosotros para determinar el mejor licitador tomando en consideración los factores esgrimidos tanto por la ley como su Reglamento de Subastas. *Autoridad de Energía Eléctrica v. Maxón Engineering Services, Inc.*, 163 D.P.R. ___ (2004), **2004 JTS 199**, a la página 491, Opinión de 9 de diciembre de 2004.

Luego de un cuidadoso examen del expediente, consideramos que la adjudicación de la subasta fue llevada a cabo dentro de un marco de razonabilidad. Este tribunal viene llamado a respetar dicha actuación, toda vez que el derecho nos impone prestar gran deferencia a procesos que, como éste, requieren una gran sofisticación técnica y conocimiento altamente especializado. Al examinar el caso de autos, encontramos que se trata del caso típico en el que debe prevalecer la norma de abstención judicial en deferencia a las determinaciones de hechos efectuadas por una agencia como resultado de su conocimiento. La AEE es la que conoce cuáles serán los mejores equipos que satisfacerán sus necesidades y cuáles son las especificaciones técnicas que éstos requieren para así hacerlo.

Nada hay en el expediente que demuestre que la actuación de la AEE constituye un abuso de discreción o que no está justificada o constituye una actuación irrazonable, ilegal o arbitraria. Por lo tanto, reafirmamos la presunción de legalidad y corrección que cobija a toda determinación administrativa y le conferimos la debida deferencia a la AEE, quien posee la experiencia y conocimientos altamente especializados sobre los asuntos que están dentro del ámbito de sus facultades y responsabilidades.

Cuando se trata, como en el presente caso, de la adquisición de servicios técnicos de gran costo y sofisticación la selección de un proveedor sobre otros, puede conllevar decisiones que descansen, no en criterios estrictamente matemáticos, sino en una valoración de la tecnología, y los recursos humanos con que cuenta ésta, a la luz de las necesidades presentes y futuras de la agencia. *Autoridad v. Maxón, supra,* a la página 490.

## V

Por los fundamentos anteriormente expuestos, confirmamos la determinación de la Autoridad de Energía Eléctrica de Puerto Rico.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones